IN THE MATTER OF: THE WILL OF THOMAS WESLEY KNOWLES, SR., DECEASED

No. 7127SC238

(Filed 28 April 1971)

1. Wills § 22— caveat proceeding — competency of testator — admissibility of lay opinion

   It is proper for the attesting witnesses to give their lay opinion concerning the competency of the testator to make a will.

2. Wills § 3— testator's request for attestation

   The testator's request for attestation may be implied from the conduct of the testator and from the surrounding circumstances.

3. Wills § 20— testator's request for attestations — sufficiency of evidence to support instructions

   The court in a caveat proceeding was warranted in instructing the jury that a request for attestation could be inferred from the testator's conduct, where there was evidence that the testator was mentally alert, although severely physically incapacitated; and that the testator could say "yea" and "nay," shake his head, and gesture with his left hand.

4. Wills § 20— testator's request that minister sign will for him — jury issue

   Evidence in a caveat proceeding could support a jury finding that a physically incapacitated testator requested a minister to sign the will for him. G.S. 31-3.3(b).

APPEAL by caveator from *Thornburg, S.J.,* 21 October 1970 Session of LINCOLN Superior Court.

This is a caveat proceeding filed by Thomas Wesley Knowles, Jr., alleging that the paper writing which purports

to be the Last Will and Testament of Thomas Wesley Knowles, Sr., dated 24 February 1969 was executed at a time when he lacked the mental and physical capacity to make a will, and that it was executed as a result of undue influence exerted by his sister, Vertie K. Wilson.

By order dated 5 February 1970, the case was transferred to the superior court for trial on the issue of *devisat vel non.*

The propounders offered evidence tending to establish the following pertinent facts: Claude G. Wilson, Jr., the executor under the purported will, and the son of Vertie K. Wilson, the sole beneficiary named in the purported will, arranged a trip to Oteen, N. C., where the deceased was hospitalized in the Veterans Administration Hospital. Mr. Knowles had had a stroke and was paralyzed to the extent that he was confined to a wheel chair, and was unable to speak except to say "yea" or "nay." Reverend G. R. McCulley signed Mr. Knowles' name on the paper writing, and also made a mark with Mr. Knowles touching the pen. The two attesting witnesses, Mrs. W. M. Hall and Faye Sloan Dixon, were both permitted, over objections of the caveator, to give their opinion as to the mental capacity of Mr. Knowles, although their opportunity for observing him was limited. Other witnesses, including Dr. E. D. Bennett, testified that in their opinion Mr. Knowles had sufficient mental capacity to make a will.

The caveators offered no evidence.

The following four issues were submitted to and answered by the jury as indicated:

"1. Was the paper writing propounded for probate in solemn form executed by Thomas Wesley Knowles, Sr., and with the formality required by the statute?

ANSWER: Yes.

"2. At the time of the execution of said paper writing on February 24, 1969, was Thomas Wesley Knowles, Sr., mentally incapable of making a valid will?

ANSWER: No.

"3. Was the execution of said paper writing procured through undue influence and duress?

ANSWER: No.

"4. Is said paper writing propounded for probate in solemn form and each and every part thereof the last will and testament of Thomas Wesley Knowles, Sr., deceased?

ANSWER: Yes."

From a judgment entered on the verdict, the caveator appealed.

*Tim L. Harris by Don H. Bumgardner for caveator appellant.*

*Harvey A. Jonas, Jr., and Willis C. Smith, by Richard Jonas, for propounder appellee.*

HEDRICK, Judge.

[1]  By his first assignment of error the caveator contends that the court committed prejudicial error by allowing the two attesting witnesses to the will "to give their lay opinion concerning the competency of the deceased, Thomas W. Knowles, Sr., to make a will. . . ." This assignment of error is without merit. In North Carolina, a witness, expert or otherwise, may give his opinion as to whether a person has sufficient mental capacity to execute a will, if he has had reasonable opportunity to observe or converse with him. *In re Will of Cauble,* 272 N.C. 706, 158 S.E. 2d 796 (1968) ; *Clary v. Clary,* 24 N.C. 78. The value of the opinion is dependent upon the opportunity of the witness to form it. *State v. Khoury,* 149 N.C. 454, 62 S.E. 638 (1908). The weight to be given to the opinion testimony is for the jury.

The caveator by his next assignment of error contends that the court committed prejudicial error in instructing the jury that a request for a witness to attest the will could be inferred from the circumstances, and that a failure to object to the requested attestation by some third party could be considered a constructive request.

[2, 3]  In North Carolina, the testator's request for attestation need not be specific; it may be implied from the conduct of the testator and the surrounding circumstances. 7 Strong, N.C. Index 2d, Wills, § 3, p. 559. "A constructive request is sometimes considered the equivalent of an actual request." *In re Will of Kelly,* 206 N.C. 551, 174 S.E. 453 (1934). The instructions complained of were appropriate and correct, for the evidence tended

to show that the testator at the time of the execution of the will, although severely physically incapacitated, was mentally alert, that he could say "yea" and "nay," that he could shake his head, and that he could gesture with his left hand. Clearly, there was sufficient evidence from which the jury could find that Mr. Knowles constructively requested the attestation of his will.

[4] The caveator's final assignment of error is as follows: "The court  erred in failing to give a peremptory instruction in favor of the caveator on the issue of the execution of the will."

The caveator argues that the deceased never requested or directed anyone to sign the will for him as required by G.S. 31-3.3(b). We do not agree. The evidence with respect to the execution of the will tends to show: Mr. Knowles, Vertie K. Wilson, C. G. Wilson, Jr., Mrs. W. M. Hall, and Faye Sloan Dixon were all together in a small room at the Veterans Hospital just prior to the execution of the will. Mr. Knowles was in a wheel chair. C. G. Wilson, Jr., read the will to Mr. Knowles and asked if that was what he wanted. Mr. Knowles acknowledged by nodding his head in the affirmative. Mr. Wilson then went out into the hall to find someone to sign Mr. Knowles' name to the instrument. There he found the Reverend McCulley who agreed to help. After being introduced to Mr. Knowles, Reverend McCulley signed Mr. Knowles' name to the will, and then, while Mr. Knowles held the tip of the pen, made a mark thereon. Mrs. W. M. Hall and Faye Sloan Dixon then attested the will in the presence of each other and Mr. Knowles.

It is our opinion and we so hold that this evidence gives rise to an inference to be resolved by the jury as to whether the will was duly executed according to law. The testator signified by a nod of his head that the paper writing read to him was his will. As previously noted, although the testator was severely physically incapacitated, he was mentally alert, and able to make known any objection he might have had to Reverend Mc-Culley's signing his name to the will. This he failed to do; indeed, he placed his hand upon the pen while Reverend McCulley made his mark.

In the trial in the superior court, we find no error.

No error.

Judges BROCK and MORRIS concur.