STATE OF NORTH CAROLINA v. R. L. "BO" STURGIS

No. 8422SC386

(Filed 16 April 1985)

**1. Criminal Law § 91— speedy trial—314 days from arrest to trial**
        There was no error in the trial court's denial of defendant's motion to dismiss on speedy trial grounds where defendant was tried 314 days after his arrest on the original warrant, which did not refer to an offense different from the one alleged in a subsequent indictment and warrant. The trial court properly excluded 33 days for a mental examination and 189 days for continuances issued on the motion of or with the consent of defendant, leaving 92 days that defendant had been awaiting trial. G.S. 15A-701 *et seq.*

**2. Rape and Allied Offenses § 19— taking indecent liberties with a child—admission of other incidents—no error**
        In a prosecution for taking indecent liberties with an eleven-year-old child, the court did not err by admitting testimony from the victim and her younger sister that defendant had committed similar acts on other occasions. The evidence was competent to show defendant's intent, motive, and ongoing plan to gratify his sexual desires while ostensibly baby-sitting these children; moreover, there was no violation of a pretrial agreement with the district attorney not to inquire into events on other dates because defendant opened the door during his cross-examination of the victim.

**3. Rape and Allied Offenses § 19— taking indecent liberties with a child—twelve-year-old witness—leading questions on direct examination proper**
        In a prosecution for taking indecent liberties with an eleven-year-old girl, the court did not abuse its discretion by permitting the State to ask the victim, who was twelve years old at the time of the trial, leading questions about the sexual acts committed upon her.

**4. Rape and Allied Offenses § 19— taking indecent liberties with a child—doctor's testimony of lab results—not hearsay**

In a prosecution for taking indecent liberties with a child, there was no error in permitting a pediatrician to testify that the victim's urine contained trichomonas, a one-celled organism indicative of sexual contact, where the urine specimen was collected by a nurse and the urinalysis was performed in the laboratory of the medical group to which the pediatrician belonged. The pediatrician's testimony was not inadmissible hearsay because it was not offered as substantive evidence of trichomonas but simply to show one of the bases for the medical opinion that the victim had had sexual contact.

Judge BECTON concurring in the result.

APPEAL by the defendant from *Morgan, Judge*. Judgment entered 16 November 1983 in Superior Court, IREDELL County. Heard in the Court of Appeals 11 January 1985.

Defendant was charged with taking indecent liberties with Sharon Curry, a minor child 11 years of age, in violation of G.S. 14-202.1. At trial, the State offered evidence which tended to show that on 2 September 1982 defendant was baby-sitting Sharon Curry at his house and her two younger sisters and that they spent the night there. During the night, defendant came into the bedroom where Sharon was sleeping with her sisters, woke her up and told her to pull her panties down. He then got on top of her and put his penis between her legs. He told her not to tell anyone, however one of the sisters, Patricia Ann Curry, awakened during the incident and observed the defendant on the bed with Sharon. Sometime later during the month of September 1982, the girls' aunt, Fannie Sue Gill, overheard them talking about the incident and questioned them. The incident was subsequently reported by the children's father to the Iredell County Sheriff's Department and the Department of Social Services. An investigation was undertaken and defendant was charged.

Defendant testified that he baby-sat for the Curry children on occasion at the request of their mother, and that he treated them like his own children. He denied ever having had any kind of sexual contact with any of the children. He also offered evidence tending to show his good character.

The jury returned a verdict of guilty and judgment was entered imposing an active sentence. Defendant appealed.

*Attorney General Rufus L. Edmisten, by Assistant Attorney General David Gordon, for the State.*

*Roger Lee Edwards, for defendant appellant.*

MARTIN, Judge.

Defendant has brought forward four assignments of error. The first of these relates to the denial of his motion to dismiss the charge, pursuant to G.S. 15A-703, for failure of the State to provide him with a speedy trial; the balance challenge evidentiary rulings made at defendant's trial. We have examined each of these assignments and find no prejudicial error in the defendant's trial.

[1] Initially, the defendant contends that he was not brought to trial within the time limits prescribed by G.S. 15A-701 *et seq.* and assigns as error the trial court's denial of his motion to dismiss the charge. The defendant was first charged in a warrant issued 9 December 1982 with taking indecent liberties with Sharon Curry on 11 September 1982. He was initially arrested on 8 January 1983. On 28 January 1983, defendant's probable cause hearing was continued until 4 March 1983 and court approval was given for the defendant to undergo a psychological evaluation. The record indicates that the evaluation was completed on 2 March 1983. On 3 March 1983 another warrant was issued charging the defendant with first degree rape of Sharon Curry, a violation of G.S. 14-27.2 (a)(1), on 2 September 1982. He was arrested on this warrant on 4 March 1983 and the earlier charge of taking indecent liberties with a minor was dismissed by the district attorney. On 9 May 1983 a true bill of indictment was returned charging the defendant with first degree rape. By three separate orders, dated 12 May 1983, 10 August 1983 and 10 October 1983, the trial of the case was continued until 14 November 1983 and, upon appropriate findings required by G.S. 15A-701(b)(7), the time was excluded from the limits established by G.S. 15A-701 *et seq.* One of these orders was entered upon motion of defendant; the other two were consented to by his counsel. On 14 November 1983 the district attorney sought, and obtained, a new bill of indictment charging defendant with taking indecent liberties with Sharon Curry on 2 September 1982. The earlier indictment charging first degree rape was then dismissed and defendant's trial began on 14 November 1983.

From the record before us, it is not apparent that the warrant issued 9 December 1982 refers to any different offense than those alleged in the subsequent warrant and indictment although the dates of when the offense is alleged to have occurred differ. Therefore, we must consider the first warrant as the original charge in this case for the purpose of computing the time within which defendant's trial must have begun pursuant to G.S. 15A-701(a1)(3). Of the events listed in the statute, the defendant's arrest on 8 January 1983 was the last to occur relating to the original charge and the computation of time commenced on that date. The total time between 8 January 1983 and 14 November 1983 was 314 days, well beyond the 120 days mandated by the statute. However, the trial judge properly excluded from computation 33 days as a delay occasioned by a mental examination pursuant to G.S. 15A-701(b)(1)(a), and 189 days as delays occasioned by the continuance orders issued on motion of, or with the consent of, defendant. He concluded that defendant had been awaiting trial for 88 days, well within the 120 day requirement of the statute. Although our computation results in a 92 day period, we find no prejudicial error in the trial judge's conclusion that defendant had been awaiting trial for 88 days, well within the 120 day requirement of the statute. We find no error in the denial of defendant's motion to dismiss on speedy trial grounds.

[2] Defendant's second assignment of error is directed to the admission of evidence of instances of similar sexual conduct by defendant with Sharon Curry and with her younger sister, Patricia Ann Curry. On redirect examination, in response to the district attorney's questions, Sharon Curry testified that on other occasions when she and her sisters had been entrusted to the care of defendant, he had committed acts similar to the offense charged in this case. Patricia Ann Curry testified that on one occasion, after the offense with which defendant is charged, defendant felt her privates and removed her clothing. Both girls testified that defendant instructed them not to tell their mother what he had done.

As a general rule, evidence of the commission of other independent offenses by an accused is not admissible as proof of guilt for the offense for which the accused is on trial. *State v. McClain*, 240 N.C. 171, 81 S.E. 2d 364 (1954). However, well established exceptions to the general rule permit proof of commission

of like offenses as evidence of intent, plan, design or motive to commit the offense charged. *State v. Greene*, 294 N.C. 418, 241 S.E. 2d 662 (1978); *State v. Fowler*, 230 N.C. 470, 53 S.E. 2d 853 (1949). In construing the exceptions to the general rule, our courts have been liberal in admitting evidence of similar sex crimes. *State v. Greene, supra; State v. Davis*, 229 N.C. 386, 50 S.E. 2d 37 (1948). For example, in *State v. Patterson*, 66 N.C. App. 657, 311 S.E. 2d 683 (1984), evidence that the defendant, charged with committing a sexual offense upon his stepson, had committed numerous similar acts upon the stepson over a four to five year period, was held competent to show defendant's "motive and intent." In *State v. Turgeon*, 44 N.C. App. 547, 261 S.E. 2d 501, *appeal dismissed*, 299 N.C. 740, 267 S.E. 2d 669 (1980), in which the defendant was convicted of assault with intent to commit rape upon a young girl, evidence that the defendant had committed sexual acts upon the sister of the prosecutrix over a two year period preceding the act with which defendant was charged, was held admissible to show "the animus and purpose" of the defendant.

Defendant contends, however, that the trial court, by the admission of this testimony, permitted the district attorney to violate a pre-trial agreement with his counsel, made at a bench conference prior to the beginning of the testimony, that the State would only inquire into the events occurring on 2 September 1982 unless defendant's counsel questioned witnesses about events occurring on other dates. There is no indication from the record that the trial judge participated in the discussion or approved the agreement nor does the record disclose any apparent reason for the district attorney's agreement to so limit the State's evidence. The defendant fails to suggest how any reliance by him on the agreement may have been to his detriment, and cites no authority in support of his contention that a violation of an agreement between defense counsel and the State to withhold admissible evidence would constitute grounds for a new trial.

While we question the validity of such an agreement in a criminal trial where the interests of the public, as well as the defendant and the victim, are involved, we need not decide the issue in this case. From our examination of the record, we conclude that there was no violation. The first witness called by the State was Sharon Curry; upon direct examination by the district attorney she recounted her version of the events which occurred

on 2 September 1982. Upon cross-examination by defendant's counsel, evidence was placed before the jury that she visited the defendant's house on frequent occasions, that defendant looked after her on weekends and that she played with his grand-children, that he took her to the movies and that she sometimes stayed with him after school. The following exchange then took place:

Q: Do you remember testifying in District Court, Sharon?

A: Yes.

Q: Do you remember answering at that time that he did have his pants on?

A: Yes.

Q: And was that the truth when you told that at that time, Sharon?

A: Well, one time he had his pants on, and another time he didn't.

Q: But you said on this occasion that you said today he came in the one time, isn't that right?

A: Yes.

Through his cross-examination, defendant's counsel inquired directly into events occurring at times other than 2 September 1982, i.e., the frequent occasions on which Sharon Curry's care was entrusted to the defendant. After she testified that at one time he had had his pants on, and that at another time he had not, counsel's next question was phrased in such a manner that the jury could be reasonably led to believe that Sharon Curry had testified that defendant had engaged in sexual conduct with her on only one of the many occasions when she had been at defend-ant's house. Taken as a whole, the cross-examination opened the door for the district attorney to clarify the matter and to show that defendant had, on other occasions, engaged in similar sexual conduct with Sharon and her sister. The evidence was competent to show defendant's intent, motive and ongoing plan to gratify his sexual desires while ostensibly baby-sitting these children.

[3] Defendant also contends that the trial court erred in overrul-ing his objections to two leading questions asked by the district

attorney during the redirect examination of Sharon Curry. A trial judge in North Carolina has discretionary authority to permit, when appropriate, the use of leading questions and in the absence of abuse the exercise of such discretion will not be disturbed on appeal. *State v. Rankin*, 304 N.C. 577, 284 S.E. 2d 319 (1981). It is within the discretion of the judge to permit counsel to ask leading questions when the witness "has difficulty in understanding the question because of age or immaturity, or where the 'inquiry is into a subject of delicate nature such as sexual matters.'" *State v. Williams*, 303 N.C. 507, 511, 279 S.E. 2d 592, 595 (1981), *quoting*, *State v. Greene*, 285 N.C. 482, 492, 206 S.E. 2d 229, 236 (1974). Sharon Curry was 12 years of age at the time of trial and was testifying about sexual acts committed upon her, certainly a subject of delicate nature. We find no abuse of discretion in permitting the district attorney to ask her leading questions as to these matters.

[4] In his final assignment of error, defendant contends that the trial court erroneously admitted testimony of the State's witness, Dr. Lewis, concerning the results of a laboratory test which he did not perform or supervise. We conclude that the testimony was properly admitted for the purpose of showing a basis for Dr. Durham's opinion that Sharon Curry had had sexual contact.

Dr. Lewis testified that he examined Sharon Curry on 8 October 1982. After obtaining a history from her, he conducted a physical examination and ordered certain laboratory tests, including a urinalysis. His nurse obtained the urine specimen from Sharon Curry and the urinalysis was performed in the laboratory of the Statesville Medical Group, where Dr. Lewis is a member of the pediatric department. He rendered his opinion that Sharon Curry "had had sexual contact, but not sexual intercourse." He went on to explain that, in his opinion, "there had been some sexual contact with her genital area but . . . I do not feel that there was any deep penetration." Dr. Lewis was then asked the basis for his opinion and he replied that there were two bases; first, the slightly enlarged vaginal opening which he found upon physical examination, and second, the laboratory finding of trichomonas, a one-celled organism indicative of sexual contact, in Sharon Curry's urine. The defendant objected to his testimony concerning the results of the laboratory tests as being inadmissible hearsay.

The applicable legal principle is stated in *State v. Wade*, 296 N.C. 454, 462, 251 S.E. 2d 407, 412 (1979), as follows:

(1) A physician, as an expert witness, may give his opinion, including a diagnosis, based either on personal knowledge or observation or on information supplied him by others, including the patient, if such information is inherently reliable even though it is not independently admissible into evidence. The opinion, of course, may be based on information gained in both ways.

(2) If his opinion is admissible the expert may testify to the information he relied on in forming it for the purpose of showing the basis of the opinion. [Citation omitted.]

Dr. Lewis' testimony as to the results of the urinalysis was not inadmissible as hearsay because it was not offered as substantive evidence for the purpose of proving the truth of the finding of trichomonas, but simply to show one of the bases for his medical opinion that Sharon Curry had had sexual contact. This assignment of error is overruled.

No error.

Judge JOHNSON concurs.

Judge BECTON concurs in the result.

Judge BECTON concurring.

Although I am not convinced that "the cross-examination opened the door for the district attorney . . . to show that defendant had, on other occasions, engaged in similar sexual conduct with Sharon and her sister," *ante* p. 193, I, nevertheless, concur in the result since there is other substantial and admissible evidence of defendant's guilt.